**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANT PRO SE:

**DONIELLE SIMS**
Michigan City, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DONIELLE SIMS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1404-PC-120 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Clarence Murray, Judge
Cause No. 45G02-1111-PC-8

**December 16, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

Donielle Sims, *pro se*, appeals the post-conviction court's denial of his petition for post-conviction relief, raising one issue for our review: whether Sims was denied the right to effective assistance of trial counsel. Concluding the post-conviction court properly denied Sims's petition, we affirm.

## Facts and Procedural History

The facts relevant to Sims's underlying convictions were recounted by this court in a memorandum decision on Sims's direct appeal:

> The evidence most favorable to the conviction is that on December 17, 2008, as Tamicka Smith returned to her apartment in Gary, she was approached by Sims, who was holding a gun and told her to hurry up and open her door. When Smith was unable to open her door quickly, Sims threatened to shoot her and punched her in the temple. After Smith opened the door, Sims pushed her down onto a couch and began asking her where her gun was. Sims apparently knew that Smith was employed as a security guard, and she was carrying a handgun in a holster on her right hip. She withdrew the gun from her holster as if she was going to give it to Sims, but she shot him instead. Smith and Sims then exchanged several shots, each hitting the other. Sims eventually fled from the apartment, screaming.
>
> Smith was transported to a hospital. Before undergoing surgery, she told police that she knew and had recognized her attacker from the way he talked and that his name was Donny, but she could not remember his last name. Smith later positively identified Sims as her attacker. Smith's surgery required the removal of part of her intestine, and she spent three weeks recovering from her wounds.
>
> Sims, meanwhile, sought treatment for his gunshot wounds at a different hospital. When police asked him how he had sustained his wounds, Sims claimed he had been shot by two Hispanic men. Police managed to recover DNA from blood stains and a cap left in Smith's apartment, and the DNA matched Sims's. In March 2009, Sims wrote Smith a letter in which he asked her to forgive him for shooting her.
>
> The State charged Sims with Class A felony attempted robbery, Class A felony burglary, Class B felony criminal confinement, Class B felony aggravated battery, and Class C felony battery. A jury trial was conducted on January 11-13, 2010. Sims testified that he had agreed to be

Smith's boyfriend in exchange for $500, but he decided he did not want to be her boyfriend, which led to a confrontation in Smith's apartment. Sims essentially claimed he shot Smith in self-defense after she shot him first. Sims was found guilty of all charges except the criminal confinement charge. The trial court subsequently entered judgment of conviction only for Class A felony attempted robbery and sentenced Sims to an executed term of forty-five years.

Sims v. State, 937 N.E.2d 436 at *1, No. 45A03-1003-CR-140 (Ind. Ct. App. Nov. 12, 2010) (footnote omitted). Sims appealed and raised two issues before this court: (1) whether the prosecutor committed misconduct during closing argument by focusing on Sims's prior felony conviction, and (2) whether the trial court abused its discretion in sentencing Sims. Id. Rejecting those claims, this court affirmed Sims's convictions and sentence. Id.

In November 2011, Sims filed his *pro se* petition for post-conviction relief, alleging ineffective assistance of trial counsel. An evidentiary hearing was held on August 23, 2013. On March 20, 2014, the post-conviction court denied Sims's petition. This appeal followed.

Discussion and Decision

I. Standard of Review

A petitioner seeking post-conviction relief bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). "A petitioner who is denied post-conviction relief appeals from a negative judgment, which may be reversed only if the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." Collins v. State, 14

3

N.E.3d 80, 83 (Ind. Ct. App. 2014) (citation and quotation marks omitted).  We defer to the post-conviction court's factual findings, unless they are clearly erroneous.  Id.

The Sixth Amendment's "right to counsel is the right to the effective assistance of counsel."  Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).  To establish a claim of ineffective assistance of counsel, a convicted defendant must show (1) counsel's performance was deficient such that it fell below an objective standard of reasonableness based on prevailing professional norms and (2) the defendant was prejudiced by counsel's deficient performance.  Id. at 687.  When considering whether counsel's performance was deficient, there exists a "strong presumption" that counsel's performance was reasonable.  Id. at 689.  A defendant is prejudiced if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.

The two prongs of the Strickland test—performance and prejudice—are independent inquiries, and both prongs need not be addressed if the defendant makes an insufficient showing as to one of them.  Id. at 697.  For instance, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed" without consideration of whether counsel's performance was deficient.  Id.

## II.  Assistance of Trial Counsel

### A.  Failure to Investigate

First, Sims argues that his trial counsel provided ineffective assistance by failing to conduct an adequate investigation of his case and to present additional witnesses at trial.[1] "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 691. The Supreme Court has noted that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions . . . [and] inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions . . . ." Id.

In its findings of fact, the post-conviction court found that "Sims did not advise counsel that there were any other witnesses to interview. Hence, counsel conducted no other interviews." Appellant's Appendix at 25. Furthermore, as discussed in more detail below, Sims claimed to have shot the victim in self-defense and that no one else was present at the time of the incident. We cannot say it was unreasonable for trial counsel to neglect to track down and present witnesses who did not exist.

_____

[1] The State contends that Sims forfeited any argument that trial counsel was ineffective for failing to conduct adequate pretrial investigation, because Sims did not plead the specifics of this argument in his petition for post-conviction relief. The State cites Badelle v. State, which states the general rule that a failure to raise an alleged error in a petition for post-conviction relief forfeits that issue for appeal. 754 N.E.2d 510, 528 (Ind. Ct. App. 2001), trans. denied. However, the court in Badelle chose to address the petitioner's argument despite the lack of specificity in the post-conviction relief petition, recognizing that testimony relevant to the argument was presented at the evidentiary hearing without objection and that this court prefers to address arguments on the merits where possible. Id. Notwithstanding the State's allegation of forfeiture in this case, we address Sims's arguments regarding pretrial investigation due to relevant evidence being presented at the evidentiary hearing, a relevant factual finding made by the post-conviction court, the State's apparent ability to address the merits of Sims's argument in its appellate brief, see Brief of Appellee at 11-13, and our desire to decide issues on the merits when possible.

5

Sims also argues that his counsel failed to discover certain facts regarding Sims's relationship with the victim and money the victim had loaned to Sims. He claims that a jury armed with these facts would surely find the victim's version of events "ridiculous." Appellant's Brief at 7. What Sims does not acknowledge is that the jury was presented with these facts through Sims's testimony, and the jury nonetheless credited the victim's version of events. Furthermore, even if it could be said that trial counsel was deficient for not presenting additional witnesses to corroborate the existence of a prior relationship between Sims and the victim, there is no reasonable probability that such testimony would bolster Sims's self-defense claim and alter the result of his trial.

B. Failure to Prepare Sims for Trial and Present Self-Defense Theory

Next, Sims asserts that trial counsel failed to adequately prepare Sims's trial testimony. In a similar vein, he argues that counsel failed to develop Sims's testimony and present evidence of self-defense at trial.

Sims alleges that counsel did not advise him that evidence of his past convictions could be presented by the State if Sims chose to testify. However, the post-conviction court's order pointed out that Sims neither questioned trial counsel on this point nor testified himself at the evidentiary hearing. As noted above, it is the petitioner's burden to present evidence substantiating his claim of ineffective assistance of counsel. See Ind. Post-Conviction Rule 1(5). Sims has failed in this respect by neglecting to present any evidence supporting his allegation that counsel did not adequately prepare him to testify at trial.

6

Sims also argues that trial counsel was deficient for failing to present evidence in support of Sims's self-defense claim. However, as noted above, the only witnesses to the incident were Sims and the victim, and Sims did testify to a version of events in which Smith shot first and Sims merely acted in self-defense. Moreover, as the State points out, trial counsel argued in his closing argument that Sims acted in self-defense, and the trial court provided the jury with a self-defense instruction. Sims has offered no evidence in these post-conviction proceedings that would have bolstered his self-defense claim or changed the outcome of his trial. Under these circumstances, we decline to find that trial counsel provided ineffective assistance of counsel.

## C. Failure to Suppress Evidence

Sims contends his trial counsel was deficient for failing to have certain evidence excluded from trial. Specifically, Sims argues that a letter he wrote to the victim after his arrest and statements made to police at the hospital should have been excluded. To prevail on a claim of ineffective assistance of counsel based on a failure to file a motion or lodge an objection on a defendant's behalf, the defendant must demonstrate that such action would have been successful. See Moore v. State, 872 N.E.2d 617, 621 (Ind. Ct. App. 2007), trans. denied.

### 1. Sims's Letter to Victim

After his arrest, Sims wrote a letter to his victim apologizing for shooting her and confessing that "[t]imes where [sic] hard for me and I knew you had a gun, which is no excuse, but that was my motive." State's Exhibit 88. Sims argues his trial counsel was ineffective for failing to have this letter excluded from evidence. However, Sims does

7

not present us with any legal basis for excluding the letter. In fact, it seems quite clear that the letter was relevant and admissible as "not hearsay" under Indiana Evidence Rule 801(d)(2)(A) (statement made by opposing party). Therefore, trial counsel did not perform deficiently by neglecting to object to the letter.

### 2. Sims's Statements to Police

Sims also argues his trial counsel should have suppressed statements that Sims made to a police officer without the provision of a <u>Miranda</u> warning. In the landmark <u>Miranda v. Arizona</u> decision, the United States Supreme Court held "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). Those procedural safeguards have come to be known as "<u>Miranda</u> warnings."[2] <u>See</u>, <u>e.g.</u>, <u>Salinas v. Texas</u>, 133 S.Ct. 2174, 2177 (2013); <u>Kubsch v. State</u>, 784 N.E.2d 905, 914 (Ind. 2003). <u>Miranda</u> warnings are required "where there has been such a restriction on a person's freedom as to render him 'in custody.'" <u>Stansbury v. California</u>, 511 U.S. 318, 322 (1994) (citation omitted). Statements elicited in noncompliance with <u>Miranda</u> are subject to suppression. <u>Id.</u>

"In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree

---

[2] <u>Miranda</u> warnings given to a person subject to a custodial interrogation include, *inter alia*, an advisement "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." <u>Miranda</u>, 384 U.S. at 444.

associated with a formal arrest.'" Id. (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam)) (brackets in original). In this case, Sims made statements to an officer at the hospital where Sims had gone after being shot. According to the officer's trial testimony, he was made aware that a gunshot victim—Sims—was at the hospital, and he found Sims at the hospital for the purpose of obtaining his identity and learning how Sims sustained his injuries. The officer approached Sims, who was lying on a gurney, and asked for his name and an explanation for what happened. At that point, Sims identified himself and told the officer that he had been shot by two Hispanic men who attempted to rob him. The post-conviction court concluded that these facts did not amount to a custodial interrogation, and we agree. Because the circumstances of Sims's statement to police do not constitute a custodial interrogation, a motion to suppress Sims's statements would have been unsuccessful. Therefore, trial counsel did not perform deficiently by failing to file a motion to suppress.

### D. Failure to Object to Prosecutor's Closing Argument

Finally, Sims argues he received ineffective assistance because his counsel failed to object to statements made by the prosecutor in closing argument when the prosecutor referred to Sims's criminal history. This claim of prosecutorial misconduct is the same argument made by Sims on direct appeal. See Sims, 937 N.E.2d 436 at *1-3. "If an issue was raised on direct appeal, but decided adversely to the petitioner, it is *res judicata*." Reed v. State, 856 N.E.2d 1189, 1194 (Ind. 2006). "[W]here an issue, although differently designated, was previously considered and determined upon a criminal defendant's direct appeal, the State may defend against defendant's post-conviction relief

9

petition on grounds of prior adjudication or *res judicata*." Id. (citation omitted) (emphasis in original). Because the issue of prosecutorial misconduct was addressed on direct appeal, it is not available to Sims in his post-conviction proceedings.

## Conclusion

Concluding Sims did not receive ineffective assistance of counsel and that the post-conviction court's denial of Sims's petition was not erroneous, we affirm.

Affirmed.

BAILEY, J., and BROWN, J., concur.